**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00339-NYW-SBP

GARY WEIDNER, III,

      Plaintiff,

v.

CLAIRE MCHALE, and
KRISTIN AMES, in her individual capacity,[1]

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter comes before the Court on the Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(b)(6) ("Ames Motion to Dismiss"), [Doc. 15, filed May 19, 2023], filed by Defendant Kristin Ames ("Defendant Ames" or "Detective Ames"); and the Motion to Dismiss Amended Complaint ("McHale Motion to Dismiss"), [Doc. 60, filed August 11, 2023], filed by Defendant Claire McHale ("Defendant McHale" or "Ms. McHale").  Plaintiff Gary Weidner, III ("Plaintiff" or "Mr. Weidner"), has responded to both Motions, [Doc. 34; Doc. 70], and Defendants Ames and McHale have replied, [Doc. 38; Doc. 76].  The Court finds that oral argument will not materially assist in the disposition of the Ames and McHale Motions to Dismiss.  Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** both the Ames Motion to Dismiss and the McHale Motion to Dismiss.

---

[1] The Court follows Defendant Kristin Ames's spelling of her name, *see* [Doc. 15 at 1], and **DIRECTS** the Clerk of Court to amend the caption in accordance with this Memorandum Opinion and Order.

## BACKGROUND

The following overview is based on the allegations in Plaintiff's Amended Complaint, [Doc. 11, filed April 20, 2023], which are taken as true for the purposes of this Memorandum Opinion and Order.  In October 2019, Ms. McHale traveled from Colorado to Pennsylvania, where she "initiated a consensual sexual relationship" with Mr. Weidner.  [*Id.* at ¶ 9].  She continued this relationship in Pennsylvania on at least one other occasion in 2019.  [*Id.* at ¶ 10].  At the same time, Ms. McHale "concocted a plan to ultimately falsely accuse Plaintiff of sexual assault and have him criminally charged with that offense."  [*Id.* at ¶ 12].  For example, Ms. McHale told Mr. Weidner "that she liked very rough sex and asked him to inflict . . . bruises," which she would photograph to later suggest that Mr. Weidner was violent with her.  [*Id.* at ¶ 14].  From her conversations with Plaintiff, Ms. McHale knew that he "was particularly susceptible to emotional trauma."  [*Id.* at ¶ 15].

Ms. McHale "lull[ed]" Mr. Weidner into this relationship through text messages in late 2019 and early 2020, and she subsequently invited Mr. Weidner to visit her in Colorado, "where she would complete her scheme of setting him up for sexual assault."  [*Id.* at ¶ 17].  Mr. Weidner traveled to Colorado in February 2020 to continue his relationship with Ms. McHale.  [*Id.* at ¶ 18].  While in Colorado, Mr. Weidner resided with Ms. McHale, and they regularly engaged in consensual sexual activity that was documented by images and text messages on Ms. McHale's cell phone.  [*Id.* at ¶¶ 19–20].  Ms. McHale also "procure[d] large amounts of drugs and alcohol to use during sexual intercourse knowing and intending to later falsely claim that the Plaintiff used drugs and alcohol to coerce her into having sexual relations."  [*Id.* at ¶ 21].  When a "pregnancy

scare" produced tension in the relationship in April 2020, Mr. Weidner returned to Pennsylvania. [*Id.* at ¶ 24].

On July 14, 2020, Ms. McHale met with Detective Ames at the Arvada Police Department in Colorado and falsely reported that Mr. Weidner repeatedly raped her over the course of several months, starting in October 2019 in Pennsylvania. [*Id.* at ¶¶ 25–28]. Ms. McHale "cut the interview short" and canceled several appointments to continue it, before ultimately returning to finish the interview in November 2020. [*Id.* at ¶¶ 29–30]. When the interview resumed, Ms. McHale falsely reported to Detective Ames that Mr. Weidner raped her in Colorado in February and March 2020. [*Id.* at ¶¶ 31–32].

Ms. McHale brought her cell phone to her interviews with Detective Ames and "provided select pictures and text messages" to support her story, while simultaneously withholding other, allegedly exculpatory content. [*Id.* at ¶¶ 39–40]. Detective Ames asked Ms. McHale to provide all relevant text messages and photographs from the period at issue, but Ms. McHale did not do so, and Detective Ames declined to extract the information herself. [*Id.* at ¶¶ 42–47]. Plaintiff alleges that the content housed on Ms. McHale's cell phone, if reviewed, would have demonstrated the falsity of Ms. McHale's reports to Detective Ames. [*Id.* at ¶ 33]. For example, Ms. McHale sent various text messages, "too numerous to count," indicating that her relationship with Mr. Weidner was consensual. [*Id.* at ¶¶ 35–38].[2]

During her interviews with Detective Ames, Ms. McHale participated in two "pretext

---

[2] Plaintiff alleges that, at the second interview, Detective Ames "was in possession of information which completely exonerated Plaintiff." [Doc. 11 at ¶ 49]. In context, the Court takes this as a reference to her proximity to Ms. McHale's cell phone and its exonerating contents. Plaintiff does not appear to suggest otherwise in his briefing. *See* [Doc. 34 at 11 & n.1].

calls" with Mr. Weidner, totaling over an hour in length. [*Id.* at ¶ 50]. According to the Amended Complaint, Detective Ames "utilized ten seconds of conversation [from the pretext calls] to support her assertion that probable cause [to arrest Mr. Weidner] existed and willfully ignored the remainder of the conversation which was wholly exculpatory." [*Id.* at ¶ 51]. Detective Ames then filed sexual assault charges against Mr. Weidner. [*Id.* at ¶ 52].[3] She submitted a sworn probable cause affidavit in support of Mr. Weidner's arrest ("Affidavit") summarizing her interviews with Ms. McHale and the pretext calls, but allegedly omitted the following from the Affidavit: (1) information that Ms. McHale "cherry picked a limited number of text messages and photographs from her telephone and withheld all relevant and exculpatory documents"; (2) text messages and photographs that were exculpatory; (3) information that Ms. McHale could not complete her first police interview and canceled several subsequent interviews; (4) information that Ms. McHale previously made false allegations of sexual assault to law enforcement; and (5) the "full context" of the pretext calls which, "in totality and in context, [were] exculpatory" and "negated the existence of probable cause." [*Id.* at ¶ 54]. An arrest warrant was issued based on Detective Ames's representations, and the Colorado state court held a preliminary hearing on March 3, 2021. [*Id.* at ¶ 56]. Detective Ames's testimony at the preliminary hearing allegedly made similar omissions to her Affidavit. [*Id.* at ¶ 55]. Plaintiff posted bond and was subject to pretrial conditions, as well as the burden of repeatedly traveling to Colorado. [*Id.* at ¶¶ 59–60].

The trial of the criminal case against Mr. Weidner began on October 11, 2021. [*Id.*

---

[3] Detective Ames also allegedly relayed Ms. McHale's statements about Mr. Weidner to investigating authorities in Pennsylvania, but charges were not filed there. [Doc. 11 at ¶ 53].

at ¶ 57].  However, "[p]rosecutors withdrew the case against Plaintiff mid-trial when they realized that Plaintiff was also in possession of the *Brady* information that they purposely withheld, knowing that they could not meet their burden with that information in evidence." [*Id.* at ¶ 58].  The Court takes the reference to withheld "*Brady* information" to cover allegedly exculpatory communications between Mr. Weidner and Ms. McHale.  *See* [Doc. 1 at ¶ 61].  As a result of the prosecution, Mr. Weidner incurred several hundred thousand dollars in legal and expert fees, "was incarcerated for a period of time," and "suffered emotional pain and suffering."  [Doc. 11 at ¶¶ 61–63].  Mr. Weidner alleges that, "[a]t all times relevant to this case, all Defendants acted with malice."  [*Id.* at ¶ 64].

Plaintiff filed this action on February 6, 2023.  [Doc. 1].  The operative Amended Complaint includes eight claims:   (1) malicious prosecution under 42 U.S.C. § 1983 against Defendants Ames and McHale ("Count I"); (2) false arrest under 42 U.S.C. § 1983 against Defendants Ames and McHale ("Count II"); (3) conspiracy under 42 U.S.C. § 1983 against Defendants Ames and McHale ("Count III"); (4) malicious prosecution under state law against Defendant McHale ("Count IV"); (5) abuse of process under state law against Defendant McHale ("Count V"); (6) intentional infliction of emotional distress ("IIED") against Defendant McHale ("Count VI"); (7) violation of a state constitutional right to be free from malicious prosecution against Defendants Ames and McHale ("Count VII"); and violation of a state constitutional right to be free from false arrest against Defendants Ames and McHale ("Count VIII").  [Doc. 11 at ¶¶ 65–106].  Detective Ames is sued in her individual capacity only.  [*Id.* at ¶ 7].  Mr. Weidner seeks to recover "compensatory damages, nominal damages, damages for emotional trauma, damages for embarrassment and humiliation, damages for lost reputation, damages for lost wages and

earning opportunity, [and] punitive damages." [*Id.* at 13].  Defendants Ames and McHale have moved to dismiss the Amended Complaint, and their motions are ripe for resolution.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim "across the line from conceivable to plausible" (quotation omitted)).  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Defendant Ames[4] and Defendant McHale have filed separate motions to dismiss.

_____

[4] With respect to Counts I and II under 42 U.S.C. § 1983, Plaintiff's Amended Complaint invokes "the Fourth and Fourteenth Amendments to the United States Constitution." [Doc. 11 at ¶¶ 66, 73].  Based on this reference to the Fourteenth Amendment, Detective Ames spends several pages of her Motion to Dismiss arguing that Plaintiff fails to state a

The Court discusses each in turn.

## I.   Ames Motion to Dismiss

***False Arrest Claims.***   Detective Ames first contends that all claims against her sounding in false arrest should be dismissed because Mr. Weidner "was never detained without legal process; he was only arrested after the issuance of an arrest warrant." [Doc. 15 at 6].  Plaintiff does not address this argument in his opposition brief.  *See generally* [Doc. 34].

Plaintiff brings multiple claims for false arrest and malicious prosecution in this action, including Counts I, II, IV, VII, and VIII.  *See generally* [Doc. 11].  The Tenth Circuit has distinguished between these two kinds of claims as follows:

> If [a plaintiff] has been imprisoned *without legal process* he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.  If he has been imprisoned pursuant to *legal but wrongful process*, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.

*Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (emphasis added); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("Reflective of the fact that false

---

substantive due process claim under the Fourteenth Amendment.  *See* [Doc. 15 at 18–20].  As Plaintiff ignores this matter entirely in an opposition brief which does not mention either due process or the Fourteenth Amendment, *see generally* [Doc. 34], the Court concludes that the Amended Complaint's passing invocation of the Fourteenth Amendment is meant only to refer to the incorporation of the Fourth Amendment as against the states and/or the relevance of the Fourteenth Amendment to a cause of action for malicious prosecution under § 1983, rather than to support an additional constitutional claim or substantive theory not specified in the Amended Complaint.  *See Mondragón v. Thompson*, 519 F.3d 1078, 1082 & n.3 (10th Cir. 2008) (noting that Fourth Amendment claims against state actors are technically also Fourteenth Amendment claims, and stating that an individual "imprisoned pursuant to legal but wrongful process . . . has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution").  Thus, this Court does not pass on Defendant Ames's substantive due process arguments.

imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges."); *Schoenfeld v. Sides*, 719 F. App'x 854, 855 (10th Cir. 2018) (noting that arrestee's "allegations would ordinarily entail malicious prosecution, not false arrest, because the arrest was based on a warrant—a classic form of legal process"). Accordingly, "allegations regarding a loss of liberty based on the institution of legal process cannot sustain a false arrest or imprisonment claim." *Montoya v. City & Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 1244264, at *13 (D. Colo. Mar. 4, 2021).

As Detective Ames points out, [Doc. 15 at 6], the Amended Complaint does not allege that Mr. Weidner was ever detained without legal process, *see generally* [Doc. 11]. Instead, it describes how Detective Ames obtained an arrest warrant, which precipitated Mr. Weidner's arrest and prosecution in state court. *See* [*id.* at ¶¶ 56–57]; *see also* [Doc. 15-1 (Detective Ames's Affidavit in support of arrest warrant); Doc. 15-2 at 2 (state court docket entries with respect to arrest warrant)]. But the Tenth Circuit has explained that the "issuance of an arrest warrant represents a classic example of the institution of legal process," *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013) (quotation omitted), which would be consistent with, at most, a claim for malicious prosecution. The Court thus concludes that Mr. Weidner's "claim for false arrest or imprisonment is limited to any restriction on his liberty that occurred before the institution of legal process in his case, i.e., before the issuance of the arrest warrant." *Montoya*, 2021 WL 1244264, at *13. Because the Amended Complaint contains no allegations respecting any such pre-warrant restrictions, *see generally* [Doc. 11], Mr. Weidner fails to state a claim for false

arrest under federal or state law.  In reaching this conclusion, the Court notes that Mr. Weidner's allegations with respect to his claims for false arrest do not specify any manner of detention to which he was actually subject, and rather fault Detective Ames for "institut[ing] criminal *proceedings*"—in other words, legal process—"against Plaintiff." [Doc. 11 at ¶¶ 74, 103 (emphasis added)].  Accordingly, it appears that only malicious prosecution claims could follow from the facts alleged in the Amended Complaint.  *See Schoenfeld*, 719 F. App'x at 855.  Counts II and VIII are **DISMISSED without prejudice** as against Detective Ames for failure to state a claim.[5]

---

[5] Detective Ames generally treats Plaintiff's supplemental state constitutional claims, which she suggests are brought pursuant to the Colorado Enhance Law Enforcement Integrity Act's waiver of certain immunities for claims against peace officers who violate state constitutional rights, as following the same substantive legal framework as the federal claims they parallel.  *See* [Doc. 15 at 4–5]; *see also* Colo. Rev. Stat. § 13-21-131(1)–(2).  Ms. McHale's arguments also tend to group Plaintiff's federal and state claims together.  *See, e.g.*, [Doc. 60 at 8].  Mr. Weidner does not address the basis for his state law claims in his responsive briefing, *see generally* [Doc. 34; Doc. 70], but he does suggest that federal law supports his state constitutional claim for false arrest against Ms. McHale, [Doc. 70 at 9].  Setting aside the issue whether Ms. McHale is properly named on Plaintiff's constitutional claims, the Court finds that the Parties have effectively conceded and agreed that Plaintiff's federal and state claims should be treated alike.  *Cf. Repass v. Inman*, No. 2021CV30060, at *7–8 (Colo. Dist. Ct. Fremont Cnty. Jan. 10, 2022) (finding that litigant "concede[d]," where he "provide[d] no legal authority otherwise, that the court is to be guided by federal case law analyzing constitutional claims" arising under the Enhance Law Enforcement Integrity Act); *see also People v. Dunaway*, 88 P.3d 619, 630 (Colo. 2004) ("Where the analogous federal and state constitutional provisions are textually identical, we have always viewed cases interpreting the federal constitutional provision as persuasive authority.").  Accordingly, the Court assumes without deciding that the merits of Plaintiff's parallel federal and state constitutional claims may be considered together.  And, to the extent that any of Plaintiff's state claims arise under Colorado common law, such as, potentially, Count IV for malicious prosecution, the Court notes that the reasoning underlying this Memorandum Opinion and Order is just as dispositive for purposes of state law tort claims. *See Lounder v. Jacobs*, 205 P.2d 236, 239 (Colo. 1949) ("Want of probable cause is an indispensable element [of Colorado's malicious prosecution tort], and it is the very substance and pith of the action."); *Wallace*, 549 U.S. at 389 (At common law, "[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*.").

*Malicious Prosecution Claims.*   Turning to the malicious prosecution claims, Detective Ames argues that Plaintiff fails to state a claim because probable cause supported his arrest.  *See* [Doc. 15 at 8–16].  The elements of malicious prosecution are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). Here, Detective Ames chiefly disputes the third element:  a lack of probable cause.  *See* [Doc. 15 at 8–16]; *see also Wilkins*, 528 F.3d at 798 ("[I]f arrested pursuant to a warrant, [a] plaintiff can challenge the probable cause determination supporting the warrant's issuance.").[6]

"Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause."  *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015).  "In such a situation, [courts] measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant."  *Id.*  Probable cause requires "a substantial probability that a crime has been committed and that a specific individual committed the crime."  *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

---

[6] The Court does not reach Detective Ames's arguments with respect to the first and fourth elements.  *See* [Doc. 15 at 16–17].

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested."  *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quotation omitted).  The Tenth Circuit assesses probable cause in the malicious-prosecution context by reference to "arguable probable cause," *see, e.g.*, *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022), which entails an objective inquiry, *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014); *see also Tallman v. Wolfe*, No. 22-cv-02129-RMR-STV, 2023 WL 9790016, at *9 n.13 (D. Colo. Dec. 22, 2023), *report and recommendation adopted*, 2024 WL 778038 (D. Colo. Feb. 26, 2024).

The starting point for the Parties' briefing on probable cause is the Amended Complaint's discussion of five alleged omissions from the Affidavit and Detective Ames's testimony at the preliminary hearing:  (1) information that Ms. McHale "cherry picked a limited number of text messages and photographs from her telephone and withheld all relevant and exculpatory documents"; (2) exculpatory text messages and photographs; (3) information that Ms. McHale could not complete her first police interview and canceled several subsequent interviews;  (4) the fact that Ms. McHale had previously falsely reported sexual assault to law enforcement; and (5) the "full context" of the pretext calls between Plaintiff and Ms. McHale.  [Doc. 11 at ¶¶ 54–55].[7]  Detective Ames argues that

---

[7] Because Detective Ames's Affidavit, [Doc. 15-1], and the pretext calls between Ms. McHale and Mr. Weidner, [Doc. 15-3; Doc. 15-4], are referenced in the Amended Complaint, *see, e.g.*, [Doc. 11 at ¶ 54], central to Plaintiff's claims, and undisputed by Plaintiff with respect to authenticity, *see generally* [Doc. 34], the Court may consider them

the Affidavit is sufficient to establish probable cause to arrest Mr. Weidner, and that the Amended Complaint does not adequately allege that she possessed any exculpatory information, failed to reasonably investigate the offense, knew about any prior false reports, or deliberately withheld any material information. *See* [Doc. 15 at 10–11]. She also notes that she attempted to interview Mr. Weidner to get his side of the story, but he refused. [*Id.* at 11–12]. And she contends, [*id.* at 15], that she provided a fair summary of the pretext calls—which included Mr. Weidner apologizing to Ms. McHale for "raping [her]," [Doc. 15-4 at 11]—in her Affidavit. In response, Mr. Weidner notes that probable cause does not exist "where an officer is in possession of exculpatory evidence," has "evidence that the victim is not reliable," or does not believe the victim. [Doc. 34 at 6–7]. Focusing on Detective Ames's failure to further investigate Ms. McHale's cell phone's contents, he also suggests that "where an officer fails to do a reasonable investigation that would negate probable cause, [she] may be held liable." [*Id.* at 9–11]. Mr. Weidner contends that, looking at the totality of the circumstances, probable cause did not exist. [*Id.* at 12]. Respectfully, the Court cannot agree with Mr. Weidner.

Under Tenth Circuit law, the Court must assess probable cause after (1) adding material information that was knowingly or recklessly omitted from the Affidavit by Detective Ames, and (2) disregarding false information she included knowingly or with reckless disregard for truth. *See Puller*, 781 F.3d at 1197. To be sure, Plaintiff's Amended Complaint alleges that Ms. McHale's underlying reports to Detective Ames about sexual assault were all false, and the Court must accept such allegations as true.

---

without converting the Ames Motion to Dismiss into a motion for summary judgment. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

*See, e.g.*, [Doc. 11 at ¶¶ 31–32].  But Ms. McHale's misstatements are not the focus of the probable-cause analysis because, as Detective Ames points out, and as Plaintiff does not seriously dispute, "Plaintiff does not allege that [Detective Ames] knew that [Ms. McHale's] reports were lies."  [Doc. 38 at 6].[8]  Rather, Plaintiff has alleged that Detective Ames would have discovered that Ms. McHale's statements were lies if she had more thoroughly investigated the contents of Ms. McHale's cell phone, and that her failure to do so suffices to impose liability.  *See, e.g.*, [Doc. 11 at ¶ 33].  Plaintiff's arguments on the Ames Motion to Dismiss track this summary.  *See* [Doc. 34 at 10].

The Amended Complaint alleges that Detective Ames requested that Ms. McHale provide *all* relevant information from the cell phone.  *See* [Doc. 11 at ¶ 42 ("[Detective Ames] asked Defendant McHale to provide all of the relevant text messages and photographs from her telephone from October 2019 through April 2020.")].  And Mr. Weidner fails to provide any persuasive or controlling authority for the proposition that Detective Ames recklessly disregarded the falsity of Ms. McHale's reports, or engaged in an unreasonable investigation, by requesting all relevant information from Ms. McHale, reviewing the evidence Ms. McHale provided, thoroughly interviewing Ms. McHale, and attempting to contact the alleged perpetrator, [Doc. 15-1 at 3], but opting against

---

[8] The Court acknowledges that the Amended Complaint contains statements under several substantive causes of action to the effect that Defendants "discussed the fact that there was no probable cause and no reason to believe that [Plaintiff] had committed a crime," and that the criminal case against Plaintiff was instituted "with knowledge that the 'alleged' probable cause was based solely on lies."  [Doc. 11 at ¶¶ 80, 84, 98, 104].  Such conclusory allegations, to the extent they apply to Detective Ames, are inconsistent with Plaintiff's factual allegations at the heart of the Amended Complaint, which recount in detail how Detective Ames failed to ascertain the falsity of Ms. McHale's reports because she did not search Ms. McHale's cell phone.  *See, e.g.*, [*id.* at ¶ 48].  The Court does not read the Amended Complaint as alleging that Detective Ames knew about Ms. McHale's alleged lies.

"extract[ing]" additional information from Ms. McHale's cell phone, [Doc. 11 at ¶¶ 44–45]. That level of investigation is hardly "turn[ing] a blind eye to exonerating evidence," as Plaintiff suggests. [Doc. 34 at 11]. Indeed, Plaintiff never alleges that he provided—or attempted to provide but was rebuffed—copies of the exculpatory evidence in his possession to Detective Ames, the police, or the prosecutors prior to mid-trial. *See generally* [Doc. 11]. To hold otherwise would impose an unreasonable investigatory burden on officers in Detective Ames's position.

Plaintiff's authority is nonbinding and distinct. For example, in *Kuehl v. Burtis*, a divided Eighth Circuit held that an officer failed to conduct a reasonable investigation, which contributed to his lack of probable cause for the arrest of a shopkeeper following a fight, where the officer had time to more thoroughly interview the shopkeeper before arresting her but declined to do so, and where he likewise refused to interview an available witness to the fight. 173 F.3d 646, 651 (8th Cir. 1999). Here, Mr. Weidner's statements on the pretext call, including several apologies for assaulting her, materially corroborated Ms. McHale's factual account, and Mr. Weidner declined to speak with Detective Ames. And *Morales v. Busbee*, in which officers did not speak with relevant witnesses whatsoever, is likewise distinct, *see* 972 F. Supp. 254, 262 (D.N.J. 1997), as Detective Ames interviewed Ms. McHale and asked her for all relevant messages. That Ms. McHale allegedly did not comply, and that Detective Ames did not seize Ms. McHale's cell phone and extract and review additional information on her own accord, do not render Detective Ames's investigation unreasonable or factor into the probable-cause analysis.

Plaintiff argues that this case is like *Kuehl* and *Morales* because Detective Ames "failed to look at exonerating messages on a phone which were in her possession and

control and which she knew existed." [Doc. 34 at 11]. Setting aside how little that statement has to do with the facts of *Kuehl* or *Morales*, Plaintiff's Amended Complaint does not allege that Detective Ames knew that any exonerating messages existed. *See generally* [Doc. 11]; *see also supra* note 8. And even if the Court viewed Plaintiff's cases and the Amended Complaint as supporting his position, the precedent that binds this Court is clear and to the contrary: "[t]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most." *Metzler v. City of Colo. Springs*, 841 F. App'x 94, 98 (10th Cir. 2021) (quotation omitted). The Court discerns no basis to consider, for purposes of the probable-cause analysis, either the notion that Ms. McHale "cherry picked" incriminating text messages and photographs, or the contents of the allegedly exculpatory text messages and photographs themselves, whatever they may have been. In short, this information was not knowingly or recklessly omitted from the Affidavit or Detective Ames's testimony. Instead, Detective Ames "acted in an objectively reasonable manner under the totality of the circumstances." *Stonecipher*, 759 F.3d at 1147.

The same conclusion follows with respect to the pretext calls. The Court has thoroughly reviewed the transcripts of these calls and finds that Detective Ames accurately summarized Mr. Weidner's statements on the calls. *Compare* [Doc. 15-3; Doc. 15-4], *with* [Doc. 15-1 at 2–3]. The conclusory assertion that the pretext calls "in totality and in context, [were] exculpatory" is belied by the undisputed call transcripts, which show Mr. Weidner repeatedly apologizing to Ms. McHale and admitting that he sexually

assaulted her.  *See, e.g.*, [Doc. 15-4 at 11]; *see also Puller*, 781 F.3d at 1197 ("Except for conclusory allegations, Puller does nothing to convince us that Detective Baca intentionally or recklessly omitted the statement.").  And the Affidavit recounted Mr. Weidner's statements that he did not remember certain of the incidents described by Ms. McHale.  *See, e.g.*, [Doc. 15-1 at 2–3].

Similarly, Plaintiff's suggestion that Detective Ames omitted the fact that Ms. McHale had previously made false reports of sexual assault is unpersuasive.  Even assuming such information might be material, the Amended Complaint does not allege any facts sufficient for the Court to conclude that Detective Ames knew, or recklessly disregarded the possibility, that Ms. McHale made any such reports. *See generally* [Doc. 11].  And finally, the Court rejects as immaterial the allegedly omitted information about Ms. McHale canceling her follow-up interviews.  Not only does that information have no bearing on whether probable cause existed to arrest Mr. Weidner based on sexually assaulting Ms. McHale, but the Affidavit makes clear that, after halting the July 2020 interview because she "began to feel ill and . . . was too emotional to continue," Ms. McHale "was unable to mentally come in for a second interview until" November 2020. [Doc. 15-1 at 1].

For his part, Mr. Weidner suggests that too much focus on any one of the alleged omissions or false inclusions would be misplaced, as it is the "totality of the circumstances" that calls probable cause into question.  *See* [Doc. 34 at 12 (emphasis omitted)].  With no specific material omissions to include, or false contents to exclude, the Court reviews the Affidavit as is and, looking at the totality of the circumstances before Detective Ames, the Court finds no circumstances that militate against probable cause

on these facts.  Detective Ames received a detailed report that Mr. Weidner sexually assaulted Ms. McHale on several occasions in Colorado, conducted a pretext call in which Mr. Weidner corroborated much of Ms. McHale's account and apologized for "raping [her]," and asked Ms. McHale to provide all relevant documents and messages from her cell phone.  *See* [Doc. 15-1 at 1–3].  Even Plaintiff acknowledges that it is "generally true" that "the word of a victim is sufficient to establish probable cause."  [Doc. 34 at 6].  Here, of course, Detective Ames had far more than Ms. McHale's word:  she had Plaintiff's confession.  *See* [Doc. 15 at 17].  Detective Ames did not possess materially exculpatory evidence or evidence that Ms. McHale was unreliable.  Under these circumstances, a reasonably prudent officer would have an adequate basis for finding probable cause existed to arrest Mr. Weidner for sexually assaulting Ms. McHale.  *See Koch*, 660 F.3d at 1239; *see also Pierce v. Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004) ("The probable cause requirement is central to the common law tort, because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable.").  Indeed, the Court fails to see how any officer could reach a contrary conclusion.

Because Mr. Weidner has not plausibly alleged that arguable probable cause did not exist on these facts, he fails to state any malicious prosecution claim.[9]  Even if the

---

[9] Detective Ames seeks to shift the burden with respect to probable cause to Plaintiff based on a presumption "that [a] prosecutor filing [a] complaint exercise[s] independent judgment" in assessing probable cause.  *See* [Doc. 15 at 9 (quoting *Queen v. Feden*, No. 2:04-cv-02607-JWL-DJW, 2005 WL 1941693 (D. Kan. Aug. 12, 2005))].  Because the Court would resolve the issue of probable cause in Detective Ames's favor without applying such a presumption, the Court need not reach whether such a presumption exists or applies.  *Cf. Stonecipher*, 759 F.3d at 1147 ("[T]he fact that a government lawyer makes the final decision to prosecute does not automatically immunize an officer from liability for malicious prosecution.").

standard was *actual* probable cause, *cf. Bailey v. Twomey*, 791 F. App'x 724, 734 (10th Cir. 2019), an issue the Parties do not engage with in the briefing, the Court would reach the same conclusion for the same reasons, as Plaintiff has not alleged that Detective Ames knew about the falsity of Ms. McHale's account.  Counts I and VII are **DISMISSED without prejudice** against Defendant Ames.  *See supra* note 5.

> ***Conspiracy Claim.***  With all other claims against her dismissed, Detective Ames argues that Count III, for conspiracy under 42 U.S.C. § 1983, should be dismissed because it is a "derivative" cause of action which requires an underlying constitutional violation "as a condition precedent to a finding of liability."  [Doc. 15 at 8–9].  Plaintiff does not address this argument, or the conspiracy claim, in his response.  *See generally* [Doc. 34].

> The Court respectfully agrees with Detective Ames.  It is settled law in the Tenth Circuit that "a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim."  *Snell v. Tunnell*, 920 F.2d 673, 701–02 (10th Cir. 1990); *see also Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) ("[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.").  No underlying claims against Detective Ames survive this Order, so Plaintiff cannot sustain his § 1983 conspiracy allegations against her.  Accordingly, Count III is **DISMISSED without prejudice** for failure to state a claim.  The Ames Motion to Dismiss is **GRANTED**.

## II.     McHale Motion to Dismiss

***Parallel Claims.***  The Court's analysis of the Ames Motion to Dismiss necessarily resolves most of the issues presented by the McHale Motion to Dismiss without having to pass on whether Ms. McHale was ever acting under the color of state law for the purposes of § 1983.  [Doc. 60 at 4–6; Doc. 70 at 4–5].  For the reasons discussed above with respect to Detective Ames, the Court **DISMISSES without prejudice** Count II against Defendant McHale for false arrest.  Plaintiff further concedes in opposing the McHale Motion to Dismiss that his "state tort claim for false arrest" is untimely, noting that he does not object to its dismissal.  *See* [Doc. 70 at 1–2].[10]  Additionally, because "[t]he existence of probable cause is a complete defense to a malicious prosecution claim," *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1195 (D. Colo. 2017) (quotation omitted), and because the Court has already found that arguable probable cause existed to arrest and prosecute Mr. Weidner based on Detective Ames's Affidavit and the information adduced in her investigation, *see Wilkins*, 528 F.3d at 799, the Court **DISMISSES without prejudice** Counts I, IV, V,[11] and VII against Defendant McHale, *see* [Doc. 76 at 7 (Ms.

---

[10] Plaintiff also argues that "the right to be free from false arrest is protected by the Colorado Constitution, and the motion to dismiss should be denied."  [Doc. 70 at 9]. Regardless of whether the right to be free from false arrest is protected by the Colorado Constitution, Mr. Weidner has conceded the claim's untimeliness.

[11] Ms. McHale argues that demonstrating probable cause results in dismissal of Count VI, for abuse of process.  [Doc. 60 at 8].  As Defendant does not address or rebut this assertion, *see generally* [Doc. 70], the Court finds that Defendant has conceded that his abuse of process claim fails upon a showing of probable cause.  In any event, the Court notes that, in Colorado, abuse of process requires showing "use of a legal proceeding in an improper manner."  *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009) (quotation omitted).  Specifically, "a litigant uses the legal proceeding in an improper manner when he seeks to use the process to accomplish a coercive goal."  *Id.*  Here, the Amended Complaint does not allege any *coercive* goal on the part of Ms. McHale.  *Cf. id.* ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive

McHale arguing that Colorado "had probable cause to arrest Plaintiff")]; *see also supra* note 5.   With Mr. Weidner's underlying constitutional claims against Ms. McHale dismissed, his derivative claim for conspiracy against her, Count III, is also **DISMISSED without prejudice**, for the reasons discussed above.   That leaves only Count V for intentional infliction of emotional distress.

*IIED Claim.*   The elements of an IIED claim in Colorado are:  "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress."   *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006).   Ms. McHale argues that Plaintiff fails to state a claim under the second element because "[t]here are no factual allegations in the Complaint to support a finding that Ms. McHale acted recklessly or with the intent to cause Plaintiff severe emotional distress," but merely that she acted in a willful and wanton manner.   [Doc. 60 at 11].   She also disputes the third element, contending that Plaintiff's allegation that he suffered "emotional pain and suffering as a result of his prosecution" is conclusory and insufficiently specific.[12]   [*Id.* (quoting [Doc. 11 at ¶ 63])].

The Court focuses on Ms. McHale's argument on the third element.   In support, Ms. McHale refers the Court to *Lee v. Reed*, in which a district court dismissed a claim for IIED under Kansas law—which similarly required a finding of "extreme and severe

---

in bringing the action or if he knowingly brought suit upon an unfounded claim." (quotation omitted)); *see also* [Doc. 76 at 5].

[12] Technically, the Amended Complaint alleges that "*Defendant* suffered emotional pain and suffering as a result of this prosecution."   [Doc. 11 at ¶ 63 (emphasis added)].   The Court takes this allegation as referring to Mr. Weidner, in his capacity as a criminal defendant in the state prosecution.

mental distress"—where the litigant alleged that she "suffered extreme emotional distress, embarrassment, shame, humiliation and severe depression" which "no reasonable person should be expected to endure." *Lee v. Reed*, 221 F. Supp. 3d 1263, 1274 (D. Kan. 2016).   The court reasoned that "[t]hese blanket statements reflect[ed] legal conclusions that [p]laintiff . . . suffered distress," that the allegations did "not permit inferences to be drawn that these were so severe no one should have to endure them," and that the "failure to allege additional facts [made] these statements insufficient." *Id.* Opposing dismissal, Plaintiff describes *Lee* as "a case claiming that facts must be alleged such that the inference of severe emotional distress can be pled," [Doc. 70 at 8], but he does not explain why that proposition is incorrect.   On the facts, Plaintiff argues that he "had to suffer the consequences of [Ms. McHale's false accusations], part of which included incarceration, for nearly a year," and that the Amended Complaint "alleges that he did in fact suffer pain and suffering."   [*Id.*].

The Court respectfully concludes that Plaintiff has inadequately alleged whatever emotional distress he has suffered for purposes of stating an IIED claim.   As Ms. McHale points out, the Amended Complaint merely states, in conclusory fashion, that Plaintiff "suffer[ed] extreme emotional distress" due to Ms. McHale's conduct.   [Doc. 11 at ¶ 95]; *see also Lee*, 221 F. Supp. 3d at 1274.   Colorado's applicable pattern jury instruction provides that:

> Severe emotional distress consists of highly unpleasant mental reactions, such as (nervous shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry) and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it.

*See* Colo. Civil Pattern Jury Instructions 23:4.   Plaintiff directs the Court to no non-conclusory allegations in the Amended Complaint regarding any such distress.   *See* [Doc.

70 at 8–9].  Instead, Plaintiff's "allegations of emotional distress are bare and conclusory," so he fails to state a claim for IIED.  *Archer v. Cook*, No. 21-cv-02649-RM-NRN, 2022 WL 2047470, at *19 (D. Colo. June 7, 2022); *see also, e.g.*, *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 759–60 (D. Md. 2015) (dismissing IIED claim based on false accusations of sexual assault due to conclusory allegations of severe emotional harm that merely "recit[ed]" the claim's elements).   Accordingly, Count VI is **DISMISSED without prejudice**.  The McHale Motion to Dismiss is **GRANTED**.

### III.   Leave to Amend

Plaintiff's opposition to the Ames Motion to Dismiss contains no reservation or request regarding potential amendment.  *See generally* [Doc. 34].  In addition, Mr. Weidner has not filed a separate motion to amend with respect to any claims against Detective Ames.  Thus, this Court dismisses the claims against Defendant Ames without leave to amend.  *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time.  Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss."); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[A] court need not grant leave to amend when a party fails to file a formal motion.").

In his opposition to the McHale Motion to Dismiss, Plaintiff notes several times that, "[t]o the extent the Court disagrees" with his opposition to certain of Ms. McHale's arguments for dismissal, he would seek leave to amend his pleading.  *See* [Doc. 70 at 5, 8–9].  Specifically, Plaintiff makes this request only with respect to Ms. McHale's

arguments (1) that Ms. McHale is not a state actor for purposes of imposing § 1983 liability under Counts I, II, and III; (2) that the Amended Complaint fails to state a claim for abuse of process under Count V; (3) that Ms. McHale did not act with malice for purposes of Counts I, IV, and VII; and (4) that Count VI, for IIED, is insufficiently pled. *See* [*id.*].  Notably, Plaintiff does not request leave to amend with respect to the false-arrest and probable-cause issues which the Court finds dispositive as to all but one of his claims.  *See* [*id.* at 5–7].  In reply, Ms. McHale deems Plaintiff's allusions to amendment "improper and insufficient."  [Doc. 76 at 4 n.3].

Without Ms. McHale's consent, *see* [*id.*], Plaintiff does not have a right to amend under Rule 15(a) of the Federal Rules of Civil Procedure.  Nonetheless, the Court may still grant leave to amend, and the Court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  If, after Plaintiff has an opportunity to review this Memorandum Opinion and Order, he continues to contend that amendment is proper with respect to his claims against Ms. McHale, he must meet and confer with Defendant McHale about any proposed amendments and may renew his request for leave to file an amended pleading through a formal motion no later than **March 27, 2024**.  Any motion for leave to amend must address and account for the Court's rulings herein, and comply with D.C.COLO.LCivR 15.1(b).  To the extent that Plaintiff does not seek leave to amend by that date, the Court will terminate this case.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)    The Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(b)(6) [Doc. 15] is **GRANTED**;

    (2)      Counts I, II, III, VII, and VIII are **DISMISSED without prejudice** as against Defendant Ames;

    (3)      The Clerk of Court is **DIRECTED to TERMINATE** Defendant Kristin Ames as a defendant in this action;

    (4)      The Motion to Dismiss Amended Complaint [Doc. 60] is **GRANTED**;

    (5)      Counts I, II, III, IV, V, VI, VII, and VIII are **DISMISSED without prejudice** as against Defendant Claire McHale; and

    (6)      Consistent with this Memorandum Opinion and Order, Plaintiff may file a motion for leave to amend as to his claims against Defendant McHale, on or before **March 27, 2024**.

DATED: March 13, 2024              BY THE COURT:

                                    Nina Y. Wang

                                    United States District Judge